IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMOTHY COLEMAN,

                Plaintiff,

v.                                            OPINION and ORDER

JAMES SCHROEDER, ANTHONY ROPER,        20-cv-647-jdp
JOHN DOE NO. 3, and DAVE MAHONEY,[1]

                Defendants.

---

Plaintiff Timothy Coleman, appearing pro se, is currently incarcerated at Dane County Jail. Coleman alleges that at a previous stint at the jail, defendant Dane County Sheriff's Office officials used excessive force in trying to overcome his resistance to having his fingerprints taken. I granted him leave to proceed on constitutional claims against three "John Doe" officers who harmed him in attempting to take his fingerprints. Coleman has identified two of the defendants, who have moved for summary judgment. Because Coleman fails to present evidence that could lead a jury to conclude that defendants used an unreasonable amount of force, I will grant defendants' motion for summary judgment and I will dismiss the case.

UNDISPUTED FACTS

The following facts are taken from the parties' proposed findings of fact and supporting evidence and are undisputed unless otherwise noted.

---

[1] I have amended the caption to include the proper spelling of defendants' names, as reflected in their filings.

On July 17, 2019, Coleman was arrested and taken to the Dane County Jail. Arrivals at the jail are "booked" by answering questions to determine the new inmate's appropriate housing location and medical needs, walking through a body scanner to prevent the smuggling of contraband, being fingerprinted, and having their picture taken. Coleman refused to answer questions, enter the body scanner, or have his fingerprints taken. Staff placed him in a holding cell and told him that he would remain there until he calmed down and agreed to complete the booking process.

Coleman asked to complete the booking process on the morning of July 19. Booking could not be completed at that time because the power was out and staff restricted the movement of inmates to emergencies only. Coleman responded by repeatedly kicking his cell door, shouting profanity, covering the surveillance camera in his cell, and destroying his mattress.

That afternoon, after power was restored and Coleman had calmed down, deputies took Coleman to the intake/booking area. Defendant Deputy Anthony Roper, the "booking deputy," was one of the deputies who attempted to book Coleman at this time. But Coleman refused to go through the body scanner or have his fingerprints taken. Coleman was placed back in the holding cell.

Defendant Roper called a supervisor, defendant Sergeant James Schroeder, and a group of deputies including Roper placed Coleman in a restraint chair and wheeled him back to the intake/booking area to fingerprint him. I take the parties to be saying that Schroeder was present with the deputies for the attempted booking.

Roper states that Coleman again refused to be fingerprinted; Coleman stated that he would fight, bite, and spit on deputies. Coleman denies that he threatened to bite deputies.

2

The deputies placed a spit mask on Coleman and then unstrapped Coleman's hand from the restraint chair to fingerprint him. According to Roper, Coleman "became aggressive" and resisted the deputies' efforts. Dkt. 58, ¶ 8. In his proposed findings, Coleman stated that a lieutenant told him that using the restraint chair to fingerprint someone violated jail policy; Coleman contends that it isn't "active resistance" to defy unlawful actions by jail staff. At his deposition, Coleman concedes that he was "fighting for [his] rights" and that he told officers that they "weren't going to get [his] fingerprints without a fight." Dkt. 61, at 25, 38. Deputies bent Coleman's clenched fingers and Roper "briefly" placed his forearm under Coleman's chin to control Coleman's head, to prevent Coleman from spitting, headbutting, or biting deputies, and to obtain the fingerprints. Dkt. 58, ¶ 8. Coleman says that Roper's forearm "choked [him] to the point that where [he] felt like [he] could not breathe." Dkt. 61, at 25. Coleman described his pain as 10 out of 10. Coleman also states that his fingers were "wound[ed]" from deputies prying them; they hurt for a "couple of days." *Id.* at 25–26.

The deputies were unable to fingerprint Coleman and they placed him back in the holding cell. The parties do not explain whether Coleman was ultimately booked at a later time. Coleman states that he suffered mental and emotional harm from the incident.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

I granted Coleman leave to proceed on constitutional claims that three unidentified "John Doe" defendants violated his constitutional rights by trying to pry his fingers apart and choking him in an effort to take his fingerprints. Coleman named Roper and Schroeder as two of the unnamed defendants, and he failed to identify the third. I will dismiss the third Doe for

3

Coleman's failure to identify him, and I will dismiss former Sheriff Dave Mahoney, who I included in the caption only as a nominal defendant to give Coleman a target for his discovery requests aimed at identifying the Does.

I previously stated that it was unclear precisely which constitutional standard applied to Coleman's claims. Dkt. 6, at 2–3. Different standards apply to an incarcerated person's claims brought under the Constitution depending on the legal status of the plaintiff: the Eighth Amendment governs claims of convicted prisoners, the Due Process Clause of the Fourteenth Amendment governs claims of pretrial detainees, and the Fourth Amendment governs claims of arrestees for whom there has not yet been a judicial determination of probable cause. *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017); *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011).

Coleman now states that he was arrested in part for violating the terms of his bail, and defendants argue that the Fourteenth Amendment standard for pretrial detainees applies to his claims, so there is no reason to consider the Eighth Amendment's subjective "deliberate indifference" standard. The parties do not flesh out the facts well enough for me to tell for certain whether Coleman's claims fall under the Fourth or Fourteenth Amendments, but there isn't a material difference in these standards following the United States Supreme Court's adoption of an "objective unreasonableness" standard for Fourteenth Amendment cases matching the standard for Fourth Amendment cases. *See Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

To prove his claim, Coleman must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). This determination is made "from the perspective of a reasonable officer on the scene, including

what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Courts must "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation marks and alterations omitted); *see also Graham v. Connor*, 490 U.S. 386, 396–97 (1989) ("the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). In reviewing an excessive force claim, relevant factors to be considered when reviewing an excessive force claim include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397.

Even accepting Coleman's version of events and viewing all of the circumstances facing defendants here in the light most favorable to Coleman, a reasonable fact finder could not conclude that defendants' use of force violated the Fourth or Fourteenth Amendments. Put another way, Coleman has not produced evidence that could lead a jury to conclude that defendants acted objectively unreasonably.

5

Most of the above factors from *Kingsley* weigh strongly in defendants' favor. To start, defendants had a legitimate interest in completing the booking process. *See, e.g., Maryland v. King*, 569 U.S. 435, 458 (2013) ("[C]ourts had no trouble determining that fingerprinting was a natural part of the administrative steps incident to arrest." (internal quotation and citation omitted)). And defendants attempted to limit their use of force by giving Coleman plenty of time to peacefully comply; he spent about two days in the holding cell before they used force in attempt to fingerprint him. Also, it was reasonable for defendants to believe that they would need to use force to obtain Coleman's fingerprints and to protect themselves: he repeatedly refused to peacefully comply with the fingerprint directive, and he was disruptive and physically violent after staff refused to move him during a power outage the morning of July 19.

The initial use of force was minimal: placement in a restraint chair. Coleman contends that defendant Schroeder, who supervised the fingerprinting attempt and presumably approved the use of a restraint chair, violated jail policy by using the restraint chair to take his fingerprints. Coleman states that a lieutenant told him that jail policy did not permit the use of a restraint chair for this purpose. But a violation of the jail's internal regulations—such as restraint-chair rules at the jail here—"is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).

Then, when deputies attempted to take his fingerprints, Coleman actively resisted their efforts. This led to two uses of force: Roper placed his forearm under Coleman's chin and into his neck, and a Doe deputy tried to pry Coleman's fingers open. Coleman mainly focuses on Roper's forearm. It is undisputed that Roper pushed his forearm into Coleman's neck in

6

response to Coleman's resistance to fingerprinting and Coleman's threats to fight staff or spit on them. I do not take lightly Coleman's assertion that Roper choked him to the point that he felt like he could not breathe, but Coleman does not present evidence disputing Roper's assertion that the use of his forearm was "brief," nor does he provide evidence that he suffered physical injuries to his neck or throat. Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Coleman's vague account of Roper's brief use of his forearm could not lead a jury to conclude that Roper acted objectively unreasonably, particularly given Coleman's disruptive and violent behavior before and during the fingerprinting attempt and the deference that must be afforded jail officials in responding to security concerns. *See Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) ("Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority . . . is to be manageable."); *Harris v. Ealey*, No. 19-CV-2210, 2021 WL 5823513, at *7 n.3 (N.D. Ill. Dec. 8, 2021) ("Plaintiff has cited no case law for the notion that choking someone for less than five seconds—while the person is actively resisting—can give rise to an excessive force claim. And this Court has located none.").

Coleman contends that Roper changed his story at summary judgment by saying that he used his forearm to ward off the threat of Coleman headbutting or biting him, when in a contemporaneous incident report Roper stated that he used his forearm after he heard Coleman getting ready to spit on him. *See* Dkt. 63-1, at 2–3. But even if Roper intentionally changed his account, that does not transform an otherwise objectively reasonable use of force into a Fourteenth Amendment violation. *See Graham*, 490 U.S. at 397 ("[a]n officer's evil intentions

7

will not make a Fourth Amendment violation out of an objectively reasonable use of force"). And Coleman doesn't materially dispute Roper's current account—Coleman concedes that he threatened deputies and resisted fingerprinting.

As for the Doe deputy's attempt to pry Coleman's fingers open, a threshold problem with this claim is that Coleman has failed to identify this Doe defendant, so he cannot succeed on a claim about this portion of the incident. And in any event, Coleman's vague assertions that his fingers were "wounded" and that he was injured for only a "couple of days" do not describe acute injuries suggesting that the deputy unreasonably used extreme amounts of force in attempting to fulfill the jail's legitimate interest in fingerprinting him after Coleman had rebuffed those efforts for two days.

In summary, I conclude as a matter of law that defendants' use of force was objectively reasonable. The undisputed facts describe uses of force made necessary by Coleman's repeated refusals to complete the booking process and his threatening and resistive behavior once deputies tried to force the taking of his fingerprints. So I will grant defendants' motion for summary judgment and I will dismiss the case.[2]

---

[2] Defendants also contend that they are entitled to qualified immunity on Coleman's claims. Because I am dismissing Coleman's claims on the merits, I need not consider defendants' qualified immunity arguments.

ORDER

IT IS ORDERED that:

1. Defendants John Doe No. 3 and Dave Mahoney are DISMISSED.

2. Defendants' motion for summary judgment, Dkt. 55, is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered May 20, 2022.

                    BY THE COURT:

                    /s/

                    _____
                    JAMES D. PETERSON
                    District Judge